UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:06CV1360-ESH |
| MITTAL STEEL COMPANY N.V., | ) ) ) | |
| Defendant, | ) ) ) ) | |

### TRUSTEE'S FOURTH REPORT PURSUANT TO FINAL JUDGMENT

Joseph G. Krauss ("Trustee"), having been appointed by the Court on August 7, 2007 pursuant to the Final Judgment entered May 23, 2007, submits the following report, as of January 30, 2007, pursuant to Article V(F) of the Final Judgment.

1.     The Order appointing Trustee was issued after Defendant had already reached an agreement with Bethlehem Acquisition Co. (a.k.a. E2 Acquisition Corp.) ("E2") to divest the Sparrows Point business to E2 (the "E2 Agreement"). That Order specifically stated that "[n]otwithstanding any provision of the Final Judgment, the Trustee may satisfy its responsibility to effect the divestiture of Sparrows Point . . . by carrying out the sale of Sparrows Point in accordance with the [E2 Agreement] . . . ." After consulting with Plaintiff and Defendant, Trustee determined that, given this language in the Order and the circumstances and timing surrounding his appointment, that his role in effecting the divestiture would be limited to staying appraised of the status of the transaction through regular communication with E2 and Defendant, keeping Plaintiff informed of any pertinent developments and generally making himself available to facilitate the resolution of any outstanding issues as identified by Plaintiff, Defendant or E2.

2.     As detailed in previous Trustee Reports, as it became increasingly more apparent that E2 neither had an agreement with the United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Service Workers International Union ("USW") nor adequate financing to complete the divestiture by November 30, 2007, the date after which either of the parties could terminate the E2 Agreement, E2 requested an extension of that termination date to December 10, 2007 (the "Extension Period"). After consulting with Plaintiff, E2 and USW, Trustee and Defendant agreed that the granting of the Extension Period was warranted. On December 11, 2007, E2 notified Trustee that it still did not have an agreement with USW and had not been able to arrange financing to complete the divestiture. In light of these developments, Trustee determined that the course of action that would best facilitate an effective

and efficient divestiture of the Sparrows Point business would be to terminate the E2 Agreement. Consequently, on December 14, 2007, Trustee instructed the Defendant to terminate the E2 agreement and Defendant did so by letter dated December 16, 2007.

       3.      Since December 16, 2007 (and in fact beginning on December 1, 2007) Trustee has been working diligently to market and sell the Sparrows Point business and identify a buyer acceptable to Plaintiff as soon as possible and at the best price and terms reasonably obtainable. Toward this end, the Trustee has taken the following steps to market and sell the Sparrows Point business, including:

    a) During the weeks of December 3, 2007 and December 10, 2007, Trustee engaged corporate, real estate, environmental, labor, employee benefits and tax counsel ("Trustee Counsel"). Trustee Counsel met with Defendant's counsel on December 7, 2007, to exchange information regarding the previous sales process for the Sparrows Point business.

    b) Trustee and Trustee Counsel met with Morgan Stanley & Co. Limited ("Morgan Stanley"), the investment bank that previously marketed the Sparrows Point business on behalf of Defendant, on December 13, 2007. After this meeting, the Trustee determined that hiring Morgan Stanley as his investment banker to assist in the sale would best facilitate an effective and efficient divestiture. Morgan Stanley began preparations to market Sparrows Point shortly thereafter. Morgan Stanley's engagement by the Trustee was formalized by the execution of an engagement letter on January 21, 2008 by Trustee, Defendant, and Morgan Stanley.

    c)

**REDACTED**

    d) During the weeks of December 17, 2007, and December 24, 2007, Trustee Counsel reviewed the data room that had been assembled for the previous sales process to determine what actions were necessary to update the data room before prospective bidders were given access. Trustee Counsel notified Defendant's counsel of what items needed to be updated, the Defendant's counsel initiated the update and the data room was opened for review by prospective bidders on January 24, 2008.

    e) Trustee, Trustee Counsel and Morgan Stanley attended a briefing and tour of the Sparrows Point Facility on January 15, 2008, to familiarize themselves with the operations and physical layout of the plant and to be briefed by Sparrows Point management on various issues that may be relevant to prospective bidders.

f) Trustee Counsel drafted a new form of purchase agreement to be made available to prospective bidders. Trustee Counsel relied substantially on the draft form of agreement that Defendant used during the initial sales process; however, substantial editing and updating was required to address new issues. That draft agreement was prepared and made available in the data room on January 24, 2008.

g) Trustee and Trustee Counsel revised and updated various materials prepared for and used in the previous sales process, including a background "teaser" that would be made available to elicit interest from potential purchasers, and an information memorandum that contained various information and facts regarding the Sparrows Point business.

h) Trustee and Trustee Counsel met with representatives of the USW on January 16, 2008, to inform the USW of the sales process and to answer any questions they had regarding the sales process. Trustee and Trustee Counsel had a follow-up conference call with USW representatives on January 25, 2008 and plan to meet in person again during the week of January 28, 2008.

i) Trustee, Trustee Counsel and Morgan Stanley compiled a list of prospective bidders that included: (1) entities that had participated in the previous bidding process for Sparrows Point; (2) entities that, by virtue of their business, Morgan Stanley thought might be interested in acquiring Sparrows Point: and (3) entities that contacted Trustee or Defendant following press reports of the termination of the E2 Agreement and expressed an interest in participating in a new bidding process.

j)

**REDACTED**

4. Since the termination of the E2 Agreement, as of close-of-business on January 29, 2008, Trustee has received indications of interest or has contacted the following entities (or representatives thereof) regarding the acquisition of Sparrows Point (all dates in 2008 unless otherwise stated):

**REDACTED**

THIS PAGE HAS BEEN REDACTED IN ITS ENTIRETY

THIS PAGE HAS BEEN REDACTED IN ITS ENTIRETY

- 6 -

**REDACTED**

5.     Trustee will continue to work diligently to market and sell the Sparrows Point business and identify a buyer acceptable to Plaintiff as soon as possible and at the best price and terms reasonably obtainable.

6.     Under Section V.G. of the Final Judgment, if the trustee has not accomplished the divestiture of Sparrows Point within 6 months after his appointment, the trustee is to file a report setting forth (i) the efforts made to accomplish the divestiture, (ii) the reasons why the divestiture has not been accomplished, and (iii) the trustee's recommendation.  Trustee

\\\DC - 030564/000001 - 2672776 v1

recommends that he be allowed to continue the sales process that is now underway for the following reasons:

a) The Order appointing Trustee on August 7, 2007 was issued after Defendant had already entered into the E2 Agreement and stated that "[n]otwithstanding any provision of the Final Judgment, the Trustee may satisfy its responsibility to effect the divestiture of Sparrows Point . . . by carrying out the sale of Sparrows Point in accordance with the [E2 Agreement] . . . ." Given the timing of his appointment, the above quoted language, and the clear agreement of both Plaintiff and Defendant that closing of the E2 Agreement was the most promising means of divesting Sparrows Point, Trustee, with the consent of Plaintiff, did not take over day-to-day responsibility for completing the divestiture, but rather allowed Defendant to attempt to complete the transaction it had negotiated.

b) For the reasons detailed above and in prior reports, the E2 Agreement did not result in the sale of Sparrows Point and was terminated on December 16, 2007. It was only at this point that Trustee could practically take over day-to-day efforts to divest Sparrows Point. Since this date, as detailed above, Trustee, with the assistance of Trustee Counsel and Morgan Stanley, and with the cooperation of Defendant, have diligently worked to initiate an effective but accelerated sales process, which was formally launched on January 21, 2008.

c)

**REDACTED**

d) Given this accelerated schedule timetable and the resources that Trustee and his counsel have already expended to facilitate this divestiture as quickly as possible, Trustee believes that continuation of his appointment will best facilitate an effective and efficient divestiture of the Sparrows Point business.

7. Prior to submitting this report, Trustee has provided it to both Plaintiff and Defendant for review.

Dated: January 30, 2008                                  Respectfully Submitted,

*Joseph G. Krauss / JMG*
Joseph G. Krauss, Trustee